UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MONIQUE ACOFF, et al.,

                                                  Plaintiffs,         Case # 22-CV-6450-FPG

v.                                                                           DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                                                  Defendants.
_____

Currently before the Court is Plaintiffs' motion for a temporary restraining order ("TRO"), ECF No. 15. For the reasons explained below and on the record, Plaintiffs' motion is in all respects DENIED.

## PROCEDURAL HISTORY

Plaintiffs Monique Acoff (a/k/a Michael Daminion), Recovery All Ways, and New York Recovery Alliance filed this action on October 18, 2022. ECF No. 1. Defendant City of Rochester filed a motion to dismiss the complaint on November 18, 2022. ECF No. 10. The Court issued a scheduling order for the motion to dismiss. ECF No. 11. The parties stipulated that Defendant Monroe County's response to the complaint is due on December 15, 2022. ECF No. 8.

On November 22, 2022, Plaintiffs filed an amended complaint. ECF No. 12. Many of the claims and facts included in the amended complaint are the same as the original complaint, but Plaintiffs removed Mayor Malik Evans, Corporation Counsel Linda Kingsley, and County DHS Commissioner Corinda Crossdale as defendants.

The same day, Plaintiffs filed a "motion to expedite review of motion for preliminary injunction." ECF No. 13. Contained within the 150-page filing was Plaintiffs' motion for a preliminary injunction, in which they ask the Court to (1) enjoin the County from "its continuing

1

failure to participate in good faith efforts to provide Plaintiff . . . and other residents[1] of the Loomis Street encampment with housing as required by law" and enjoin the City from "clearing the encampment until the County can provide adequate housing" for residents. ECF No. 13 at 12. In other words, Plaintiffs ask the Court to enjoin either defendant from taking any action to shut down the encampment until there is a satisfactory plan to relocate them. The Court set a briefing schedule and scheduled oral argument on the motion for a preliminary injunction for December 13, 2022, at 3:30 p.m.

At around 10:00 a.m. on November 29, 2022, Plaintiffs filed an "ex parte" motion for temporary restraining order, based upon reports that the City was planning to build a fence around the encampment and, eventually, remove residents. ECF No. 15. The Court held oral argument on the motion for 3:00 p.m. on November 29, 2022. ECF No. 16. Counsel for Plaintiffs and the City were present and counsel for the County appeared by phone.

## FACTUAL BACKGROUND

Since at least 2017, individuals experiencing homelessness have camped on a grassy, otherwise abandoned City-owned lot tucked along Loomis Street, a one-way street off Joseph Avenue in the City of Rochester. Many of the residents of Loomis Street have substance use disorders and serious mental illnesses. Grassroots outreach organizations such as Plaintiffs Recovery All Ways and New York Recovery Alliance have provided clothing, food, water, and wellness checks to residents. ECF No. 13 at 13.

Plaintiffs allege that the residents of the encampment live there because "there are no other options for them." ECF No. 12 ¶ 4. Shelter beds are hard to come by and, even when a bed is available, "most of the residents of the encampment would not be able to take advantage of it due

---

[1] The Court uses the term "residents" colloquially, as do the parties, to reference the individuals living at the Loomis Street encampment—not to suggest any legal right to the property.

to barriers including: sanctions by the Department of Human Services; lack of personal identification; need for an emotional support animal; because the anxiety and mental health issues experienced by residents of the encampment makes it difficult, if not impossible, for them to stay in a crowded, chaotic shelter environment where there is little to no privacy; or because, unlike overdose prevention and low barrier shelters in other parts of New York State, none of the local shelters allow residents with treatable substance use disorder to use a substance they are addicted to."[2] *Id.* ¶ 5.

Plaintiffs argue that the City plans to imminently close the encampment. Plaintiffs allege that without a suitable shelter provided by the County, they will have no place to go. Plaintiffs appear to define "suitable" as a place without the restrictions identified above. Plaintiffs are clear that they are "NOT asking for permanent continuation of the encampment, but instead want suitable, accessible housing, and to be allowed to remain at the encampment where they have community and access to services until the Defendants can provide such safe options consistent with their obligations under the law." ECF No. 13 at 12 (emphasis in original).

Plaintiffs indicate that the City's Corporation Counsel, Linda Kingsley, stated on November 28, 2022, that the City was installing a fence with a gate at the encampment that would be completed within a week to ten days. ECF No. 15-2 ¶ 7. According to Plaintiffs, Kingsley "stated that the residents are being asked to leave, but are not being forced out at this time, but that they would not be permitted to stay at the site upon completion of the fence." *Id.* ¶ 8. Plaintiff indicated that police officers told him to move or be subject to arrest. *Id.* ¶ 9.

## DISCUSSION

In the Second Circuit, "a party must establish four elements to prevail on a motion for a preliminary injunction: (1) a likelihood of irreparable harm; (2) either a likelihood of success on

---

[2] Plaintiff Monique Acoff/Michael Daminion alleges that he does not have personal identification and has a support animal, which is not allowed in shelters.

the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest." *Chobani, LLC v. Dannon Company, Inc.*, 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016). "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) (quoting another source).

I.  **Mootness and Standing**

First, this action appears to be moot. At oral argument, counsel for the City indicated that all of the individuals living at the Loomis Street encampment have left and found other shelter with the help of the City and County. Therefore, Defendants' clearing of the encampment will not cause any injury that can be redressed by this Court. *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) ("If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." (quoting another source)).

Second, the Court is not persuaded that organizational Plaintiffs, Recovery All Ways and New York Recovery Alliance, had standing at the outset. An organization may establish organizational standing based on a direct injury to the organization itself. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish organizational standing, it is a plaintiff's burden to "independently satisfy the same Article III standing inquiry that applies to individuals," *i.e.*, "(1) an injury in fact to a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal connection between the injury and the conduct complained of, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp.

3d 219, 228 (S.D.N.Y. 2019) (internal quotation marks omitted).  To establish associational standing, an organization must "name at least one of its affected members." *Pen Am. Cntr., v. Trump*, 448 F. Supp. 3d 309, 320 (S.D.N.Y. 2020).  Neither organization has established these requirements.

Despite the Court's serious concern about whether there is a live controversy and whether Plaintiffs have standing, it proceeds to address the remaining factors required for a TRO.

**II.   Irreparable Harm**

Acoff argues that he will suffer irreparable harm if he is forced to leave Loomis Street because he will be "without proper housing and has nowhere else to go."  ECF No. 13 at 20. Recovery All Ways and New York Recovery Alliance assert that they will suffer irreparable harm because closing the encampment "will frustrate the mission of the organizations to provide services to the homeless residents at Loomis Street."  *Id.* at 21.  Plaintiffs argue, for purposes of the temporary restraining order, that a threatened deprivation of a constitutional right is sufficient to establish irreparable harm.  Yet, no Plaintiff has articulated how they may be irreparably harmed by the City erecting a fence around the Loomis Street encampment now that no one lives there. This factor accordingly weighs against granting a TRO.

**III.   Likelihood of Success on the Merits**

There are five claims in the amended complaint: (1) Fourth Amendment violation for unreasonable search and seizure of "residents['] belongings and throwing them in the garbage as part of encampment sweeps"; (2) Fourteenth Amendment due process violation of the right to be free from state-created dangers "by their actions to force [residents] to leave even though there is nowhere else for [them] to go, and failing to provide adequate alternative shelter," thus resulting in "completely foreseeable damage"; (3) violation of right to freely associate and travel; (4) violation of the New York State Constitution for breach of the State's duty to care for and support

the needy; and (5) violation of the New York Social Services Law and regulations, which require that the County provide temporary housing to those experiencing homelessness in accordance with its approved homeless services plan. ECF No. 12. It appears that Plaintiffs attempt to hold the City and County liable for the constitutional claims via *Monell v. Dept' of Soc. Servs.*, 436 U.S. 658 (1978). As the Court indicated at oral argument, Plaintiffs are unlikely to succeed on any of these claims.

At the heart of Plaintiffs' claims is their argument that the City and County have created a danger to them by threatening to remove them from Loomis Street without anywhere else to go. But it is not necessarily that the residents have nowhere else to go, rather that they do not have anywhere to go that suits their specific wants or needs. "[U]nder both federal and New York Sate law, shelter residents do not have a constitutionally protected property right to placement in a particular type of shelter." *Barker v. Women in Need, Inc.*, No. 20-CV-2006, 2020 WL 1922633, at *3 (S.D.N.Y. Apr. 20, 2020). Thus, this factor weighs against a TRO.

**IV.     Balance of Hardships and Public Interest**

The Court now turns to the final two factors, which weigh heavily against granting a TRO. The Court is sympathetic to homeless individuals in the Rochester area, especially as the weather turns colder, and commends the vital, humanitarian efforts of community organizations, such as Plaintiffs here, who help the unhoused. Still, that does not mean the encampment should remain open. To the contrary, the Court finds it exceedingly difficult to comprehend how it is in Plaintiffs' or anyone's best interest for the encampment to remain open. The living conditions at the encampment are unhygienic; residents have been known to urinate and defecate at the encampment and in the surrounding neighborhood, posing a serious public health risk. In addition, by Plaintiffs' own admissions, some residents use illegal drugs at the encampment, again, posing a danger to themselves and the community. Moreover, residents who lived in tents at the encampment were

at the mercy of the deteriorating weather and would continue to be if they returned to the encampment. By contrast, all residents of the encampment have been offered and now accepted shelter elsewhere, where they can receive social services, health care, food, safe water, places to use the restroom and bathe, and opportunities to enter mental health and substance abuse treatment—opportunities not consistently available to them at Loomis Street. In other words, a TRO enjoining Defendants from closing Loomis Street—effectively reopening it for inhabitation—would not be in the public interest; it would actually *harm* the public.

Plaintiffs admit that this property is owned by the City and they have no legal right to reside there. Trespass warning signs have been posted throughout the area. Over the past several months, the City has elected not to arrest the individuals for trespass. Further, the City's Corporation Counsel, Linda Kingsley, represented that she has personally met with the Plaintiff advocacy groups on 18 separate occasions in an effort to resolve the issues related to these homeless individuals. Those talks were unsuccessful. Especially considering that the encampment is the City's property, Plaintiffs have no legal right to remain there, and that the encampment adversely affects the 12 surrounding neighbors, the Court concludes that the balance of hardships tip decidedly *against* Plaintiffs.

## CONCLUSION

For the reasons explained above and on the record, Plaintiffs' motion for a temporary restraining order, ECF No. 15, is in all respects DENIED. Plaintiffs shall notify the Court no later than December 2, 2022 as to whether they intend to withdraw their motion for a preliminary injunction. If they do not withdraw the motion, Defendants' responses will be due no later than December 7, 2022, and replies will be due no later than December 9, 2022. Oral argument will be held in person on December 13, 2022 at 3:30 p.m.

IT IS SO ORDERED.

Dated:  November 30, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

8